CLEMENT ROBERTS (SBN: 209203)
croberts@orrick.com
JOHANNA JACOB (SBN: 286796)
jjacob@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

AMY VAN ZANT (SBN: 197426)
avanzant@orrick.com
LILLIAN MAO (SBN: 267410)
lmao@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
*Attorneys for Plaintiff*
RINGCENTRAL, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RINGCENTRAL, INC.,<br>Plaintiff,<br>v.<br>DIALPAD, INC.,<br>Defendant. | **Case No.: 3:18-cv-5242**<br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff RingCentral, Inc. ("RingCentral" or "Plaintiff") as and for its Complaint against defendant Dialpad, Inc., ("Defendant" or "Dialpad"), states and alleges as follows:

## THE PARTIES

1. RingCentral is a Delaware corporation with a place of business at 20 Davis Dr., Belmont, CA 94002. RingCentral (NYSE: RNG) is the Gartner Magic Quadrant leader in providing cloud-based unified communications as a service. Its software-as-a-service platform provides a comprehensive set of business communications features for voice, virtual private branch exchange ("vPBX"), audio and video conferencing, messaging, contact center, collaboration, SMS, online meetings, contact center, and fax. The World Economic Forum has recognized Vladimir Shmunis, RingCentral's co-founder, CEO, and Chairman, with the "Technology Pioneer of the Year Award," and RingCentral has won numerous industry awards recognizing its world-class, leading technology solutions.

2. Dialpad is a Delaware corporation with its headquarters located at 100 California St., Suite 500, San Francisco, CA 94111. Dialpad provides the cloud-based unified communications market with business phone solutions, including voice, video, and messaging.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331, 1338, in that RingCentral seeks, *inter alia*, relief for Dialpad's infringement of RingCentral's patents.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391 and 28 U.S.C. § 1400 because Dialpad's principal place of business is within the Northern District of California.

5. This Court has personal jurisdiction over Dialpad because Dialpad is based in the Northern District of California and has committed acts of patent infringement in this jurisdiction.

## INTRADISTRICT ASSIGNMENT

6. Pursuant to Local Rule 3-2(c), intellectual property actions are assigned on a district-wide basis.

## BACKGROUND

**Relevant RingCentral History**

7. About twenty years ago, RingCentral was founded with a vision to offer unified cloud-based communication products and services for businesses. RingCentral's cloud-based communications platform provides a diverse set of robust and innovative features and functionalities. RingCentral's technology enables customers to connect multiple devices, including desktops, laptops, smartphones, and tablets so that they can seamlessly communicate through audio calls, voice messages, text messages, faxes, audio/video conferences (offered in coordination with Zoom Video Communications), and collaboration tools. RingCentral provides this functionality through easy-to-use interfaces that implement message threading, preview, and transcription to intelligently display the heterogeneous messages that its customers receive. For example, RingCentral's technology supports video and audio conferences that allow participants to exchange chat messages during the conference, and handle the participants' involvement in the meeting through sophisticated user interfaces and controls. RingCentral's product offerings—including RingCentral Office®, RingCentral Meetings™, RingCentral Fax®, RingCentral Glip™, and RingCentral Professional™—work well in both small and medium size business and large enterprises, and allow companies of any size to set up departments, extensions, and routing rules to manage incoming calls.

**Patents-In-Suit**

8. RingCentral has been a leader in developing the technological solutions necessary to move a unified communications platform into the cloud while enabling flexibility of user devices on the client side. RingCentral's pioneering efforts in developing cloud-based communication products and solutions have culminated in the issuance of over 150 patents worldwide, including U.S. Patent Nos. 8,483,367 ("the '367 Patent") (Exhibit A); 9,774,722 ("the '722 Patent") (Exhibit B); 7,702,669 ("the '669 Patent") (Exhibit C); and 8,600,363 ("the '363 Patent") (Exhibit D) (collectively, "the Patents-in-Suit," attached hereto as Exhibits A, B, C, and D).

9. Dialpad has had knowledge of its infringement of the Patents-in-Suit, since at least

July 20, 2018, when counsel for RingCentral sent Dialpad's CEO, Craig Walker, a letter demanding that Dialpad "cease and desist" its "unauthorized use" of the Patents-in-Suit and identified specific Dialpad products that infringe each of the Patents-in-Suit.

**Dialpad Infringes RingCentral's Patents-in-Suit**

10. Dialpad offers unified communications as a service. In entering the market, Dialpad heavily leveraged RingCentral's innovations—including at least the inventions claimed in the Patents-in-Suit—to offer its competing product lines but did so without a license or permission from RingCentral.

11. In January 2015, Dialpad launched a business PBX cloud based VoIP service. Dialpad offers its PBX service at three increasing price points with increasing levels of functionality: (1) Dialpad Standard includes unlimited calling and text-based messaging in the United States and Canada, unlimited conferencing with up to 10 participants, HD video calling, single sign-on, softphones, and VoiceAI; (2) Dialpad Pro includes these same features plus call center, international offices, department audio recording, and voice transcription; and (3) Dialpad Enterprise includes all of the features of Dialpad Pro plus Enterprise SLA and Admin APIs. With these increasing price point packages, Dialpad also increases its third-party integration enablement and its level of customer support.

12. In December 2017, Dialpad launched Dialpad Free, which purports to be a zero-cost Web-based free business VoIP phone system for businesses with five employees or less. Dialpad Free is a scaled-down version of Dialpad Pro and does not include certain features, including the ability to send and receive fax messages.

13. Dialpad also offers UberConference Free and UberConference Business. UberConference Free allows conferencing for up to 10 people and this functionality is included with Dialpad Free, Dialpad Standard, Dialpad Pro, and Dialpad Enterprise. Dialpad's PBX customers can upgrade to UberConference Business, which provides additional functionality, for an additional monthly fee. The UberConference service is also offered as a standalone product that customers can purchase and use independent of Dialpad's VoIP communications plans.

14. Dialpad Free, Dialpad Standard, Dialpad Pro, Dialpad Enterprise, UberConference Free, and UberConference Business (collectively, "the Infringing Products") infringe RingCentral's intellectual property rights. Dialpad makes, uses, sells, and offers to sell the Infringing Products.

15. The Infringing Products use the technology claimed in the Patents-In-Suit in a plurality of ways. Among other things, the Infringing Products comprise cloud-based virtual PBX services that enable multiple users to communicate using a variety of devices (*e.g.*, mobile phones, desktop phones, and computers) and communications means (*e.g.*, SMS text messages, faxes, and voice calls/voicemails) while synchronizing sent/received voice and fax messages across the multiple devices. The Infringing Products implement user interfaces that allow for message previews, threading, and transcription. Further, the Infringing Products include virtual conference services that allow participants to call in, communicate via text during the conference, and handle calls within the conference, including by muting or ending a participant's call. The Infringing Products also support message-management server configurations that enable subscriber-identifying information in communications between internal subscribers of the system to be displayed differently than in communications between a subscriber department and an external user.

**Dialpad's Infringement of the '367 Patent**

16. RingCentral owns, and has for all relevant times owned, all right, title, and interest in the '367 Patent, titled "Messaging in a hosted private branch exchange." (*See* Exhibit A). Each of the claims of the '367 Patent is presumed valid. The '367 Patent solves the problem of routing messages over the internet between a subscriber of a PBX system to one or more devices outside of the subscriber system.

17. More specifically, the '367 Patent claims a system and method for message-management server configurations that enable subscriber-identifying information in communications between a member of a department subscriber to be displayed differently than in communications between a member of a department subscriber and an external user. This is a problem unique to cloud-based PBX systems and a problem that RingCentral solved using unconventional techniques, *i.e.*, through the interplay of multiple sets of message-distribution rules

stored on a message-management server such that different rules will flexibly apply depending on whether the user is messaging within his/her "department" role or outside of that role. By identifying distribution rules that apply to an individual subscriber in different use cases (*e.g.*, "department communication" or "non-department communication") and by maintaining different sets of subscriber identification rules for individuals and departments (*e.g.*, as shown in Fig. 4), the '367 Patent enables the routing of messages over the internet both (1) between a subscriber of a PBX system to one or more devices outside of the subscriber system without providing individual subscriber identifying information and (2) between subscribers of the PBX system and providing individual subscriber identifying information.

18. The '367 Patent has 18 claims, including independent claim 1. Independent claim 1 recites: "A hosted private branch exchange (PBX) system comprising: non-transitory storage that includes subscriber identifying information that identifies a subscriber to a message routing service; non-transitory storage that includes distribution rules information associated with the identified subscriber; and a message management server configured to receive a message sent over the Internet to the identified subscriber and to send the message over the Internet to one or more devices according to the distribution rules associated with the identified subscriber; wherein the subscriber identifying information identifies a department subscriber to the message routing service and department members; wherein the distribution rules information includes department message distribution rules associated with the identified department subscriber; wherein the department message distribution rules include a first rule for distribution of a message received from a department outsider that is directed to the department; wherein the message management server distributes messages to the identified department members, according to the first rule, that include content of a message received from the department outsider and directed to the department; wherein the message management server is configured to associate a thread identifier to a message received from a department outsider and to include the associated thread identifier with the messages that it distributes to the identified department members according to the first rule; wherein the department message distribution rules include a second rule for distribution of a message received from a

department member that is directed to a department outsider; wherein the message management server distributes messages to a department outsider and to the identified department members, according to the second rule, that include message content received from a department member that is directed to the department outsider; wherein the message management server provides an indication of an identity of the department member that the message content is received from in the messages distributed to the identified department members; and wherein the message management server provides an indication in the message distributed to the identified department outsider that the message content is received from the department but does not provide an indication in the message distributed to the identified department outsider of the identity of the department member that the message content is received from."

19. At least Dialpad Standard, Dialpad Pro, and Dialpad Enterprise (collectively, "the '367 Infringing Products") infringe at least claims 1, 3, 4, 7, and 8 of the '367 Patent.

20. For example, the '367 Infringing Products are a "hosted private branch exchange (PBX) system." *See, e.g.*, http://blog.dialpad.com/blog/the-life-of-a-call-part-4-the-future-is-now (Dialpad is a "cloud-based PBX system").

21. In addition, the '367 Infringing Products include storage "that includes subscriber identifying information that identifies a subscriber to a message routing service" and "the subscriber identifying information identifies a department member subscriber to the message routing service and department members." *See, e.g.*, https://help.dialpad.com/hc/en-us/articles/115003378526-Create-a-Department (showing how to create a department associated with a particular subscriber line) (individual subscriber identifying information can similarly be input through the subscriber profile interface):




22. The ’367 Infringing Products further include storage “that includes distribution rules information associated with the identified subscriber” and “the distribution rules information includes department message distribution rules associated with the identified department subscriber.” The ’367 Infringing Products enable storage of distribution rules associated with an identified subscriber. Similarly, the ’367 Infringing Products enable storage of department message distribution rules associated with the identified department subscriber, as shown below, where the department members to whom department messages should be routed can be specified:




23. Dialpad’s servers are also “configured to receive a message sent over the Internet to the identified subscriber and to send the message over the Internet to one or more devices according to the distribution rules associated with the identified subscriber”; and in the ’367 Infringing Products, “the department message distribution rules include a first rule for distribution of a message received from a department outsider that is directed to the department” and “the

message management server distributes messages to the identified department members, according to the first rule, that include content of a message received from the department outsider and directed to the department." *See, e.g.*, https://help.dialpad.com/hc/en-us/articles/212177303-Messaging-in-Dialpad-FAQs; https://help.dialpad.com/hc/en-us/articles/210456583-Handle-Dept-Calls-Messages- (showing that (1) SMS messages can be sent over the Internet to a subscriber and (2) department messages will be sent to individual department members):


**Can I send an SMS/MMS to the Main Line or Department?**

Definitely. You can send and receive both SMS/MMS from your Main Line or Departments. Learn how to manage your Main Line/Department messages.

Receive a Message

When you receive a message to your Department, you'll be notified on the sidebar next to your Department's name. We'll also push a notification to your Android device (no iOS or desktop app).



24. Further, in the '367 Infringing Products, "the message management server is configured to associate a thread identifier to a message received from a department outsider and to include the associated thread identifier with the messages that it distributes to the identified department members according to the first rule." *See, e.g.*, https://help.dialpad.com/hc/en-us/articles/115003317366-Messaging-Options- (showing threaded messages can be deleted and

confirming existence of thread identifier):

Delete a Chat

Click the drop-down arrow on your message to display options to **Delete** or **Delete Thread**.

If you select Delete, the currently selected message will be deleted. If you select Delete Thread, all messages within the conversation thread will be deleted (including call and voicemail notifications).

25. Further, in the '367 Infringing Products, "the department message distribution rules include a second rule for distribution of a message received from a department member that is directed to a department outsider; wherein the message management server distributes messages to a department outsider and to the identified department members, according to the second rule, that include message content received from a department member that is directed to the department outsider"; and "the message management server provides an indication in the message distributed to the identified department outsider that the message content is received from the department but does not provide an indication in the message distributed to the identified department outsider of the identity of the department member that the message content is received from." *See, e.g.*, https://help.dialpad.com/hc/en-us/articles/210456583-Handle-Dept-Calls-Messages-#send-a-message (messages from "Sales Department"):

Send a Message

To send a Department message:

1. Click on **New Message**
2. Select Department from New Message From drop-down




**Dialpad Tip:** Department messages display your Department's name and number.

26. Further, in the '367 Infringing Products, "the message management server provides an indication of an identity of the department member that the message content is received from in the messages distributed to the identified department members."

27. The preceding discussion of claim 1 in the ’367 Patent is exemplary. The ’367 Infringing Products infringe other claims in the ’367 Patent upon same or similar grounds. RingCentral reserves its right to identify additional claims and additional infringing products as supported by discovery in the case.

**Dialpad’s Infringement of the ’722**

28. RingCentral owns, and has for all relevant times owned, all right, title, and interest in the ’722 Patent, titled “System and method for managing calls.” (*See* Exhibit B). Each of the claims of the ’722 Patent is presumed valid.

29. The ’722 Patent solves a problem that particularly arises in the context of cloud-based communications—namely, how to effectively pull together the available audio, visual and call control features needed to create and support a flexible collaboration environment. RingCentral solved this problem in an unconventional way that includes the creation of an audio and textual collaboration space that supports adding participants, while maintaining the ability to handle (and control) those incoming calls within the collaborative environment (as opposed to offering ancillary communications options outside of the collaboration environment). *See, e.g.*, Fig. 6.

30. The ’722 Patent has 21 claims, including independent claim 14. Independent claim 14 recites: “A communication server for managing calls in a collaboration environment, comprising: at least one memory configured for storing instructions; and at least one processor in communication with the at least one memory and configured to execute the instructions to: receive a call into a collaboration session of the collaboration environment, wherein the collaboration session is associated with a first interface that enables a plurality of users of the collaboration session to communicate with each other using text-based communication; and cause display of a notification reflecting the call in the first interface associated with at least a first user of the plurality of users, the notification enabling the first user to handle the call.”

31. At least Dialpad Free, Standard, Dialpad Pro, and Dialpad Enterprise (each of which includes UberConference) as well as UberConference Free and UberConference Business infringe at least claims 1, 3, 6, 14, 15, 20, and 21 of the ’722 Patent (collectively, “the ’722 Infringing

Products").

32. For example, Dialpad's '722 Infringing Products are a "communication server for managing calls in a collaboration environment" including "at least one memory configured for storing instructions" and "at least one processor in communication with the at least one memory and configured to execute the instructions." *See, e.g.*, https://www.dialpad.com/; *see also* http://blog.dialpad.com/blog/the-life-of-a-call-part-4-the-future-is-now ("Dialpad is a cloud-based PBX solution.").

33. In addition, Dialpad's '722 Infringing Products "receive a call into a collaboration session of the collaboration environment, wherein the collaboration session is associated with a first interface that enables a plurality of users of the collaboration session to communicate with each other using text-based communication" and "cause display of a notification reflecting the call in the first interface associated with at least a first user of the plurality of users, the notification enabling the first user to handle the call." *See, e.g.*, https://www.uberconference.com/features (example of caller icons displayed during UberConference collaboration):




and https://www.uberconference.com/features/group_conference_chat (showing texts between conference members during UberConference):




34. The preceding discussion of claim 21 in the '722 Patent is exemplary. The Infringing Products infringe other claims in the '722 Patent upon same or similar grounds. RingCentral reserves its right to identify additional claims and additional infringing products as supported by discovery in the case.

**<u>Dialpad's Infringement of the '669 and '363 Patents</u>**

35. RingCentral owns, and has for all relevant times owned, all right, title, and interest in the '669 Patent, titled "Synchronization in Unified Messaging Systems." (*See* Exhibit C). Each of the claims of the '669 Patent is presumed valid.

36. RingCentral owns, and has for all relevant times owned, all right, title, and interest in the '363 Patent, titled "Synchronization in Unified Messaging Systems." (*See* Exhibit D). Each of the claims of the '363 Patent is presumed valid.

37. The '363 Patent claims priority to the '669 Patent and the two share a common specification. The '669 and '363 Patents solve the problem of managing cloud-based heterogeneous messaging systems with multiple connected user devices accessing and modifying those messages. Specifically, the '669 Patent claims systems and methods that enable synchronizing fax and voicemail messages on a server with fax and voicemail messages on at least two separate client devices, *e.g.*, a laptop and a smartphone. Similarly, the '363 Patent claims systems and methods that enable synchronizing fax or voicemail messages on a server with fax or voicemail messages on a client device using a discrepancy assessment. Both of these patents claim inventions that solve problems that are unique to cloud-based distributed networks with multiple users and multiple

devices that simultaneously need up-to-date access to a wide variety of messages through a single unified interface and solve that problem using unconventional techniques, including an unconventional clustering technique combined with an unconventional synchronization algorithm.

38. The ’669 Patent has 13 claims, including independent claim 22. Independent claim 22 recites: “A unified messaging system comprising: a computer implemented server including a processor configured to store a plurality of server messages grouped into a message cluster, the server messages including voicemail messages and fax messages for a client; a first client configured to store a first plurality of client messages, the first client messages including voicemail messages and fax messages for the first client and corresponding to the plurality of server messages; a first synchronization application for synchronizing the first client messages with the server messages associated with the first client including performing at least one synchronization action selected from the group consisting of a read/unread status of a first client message to read when a read/unread status of a corresponding server message is set to read and unread when the read/unread status of the corresponding server message is set to unread; and a read/unread status of a server message to read when a read/unread status of a corresponding first client message is set to read, and unread when the read/unread status of the corresponding first client message is set to unread; a second client that is not the first client configured to store, separately from the first plurality of client messages, a second plurality of client messages, the second client messages including voicemail messages and fax messages for the second client and corresponding to the plurality of server messages; a second synchronization application for synchronizing the second client messages with the server messages including performing at least one synchronization action selected from the group consisting of a read/unread status of a second client message to read when a read/unread status of a corresponding server message is set to read, and unread when the read/unread status of the corresponding server message is set to unread; and a read/unread status of a server message to read when a read/unread status of a corresponding second client message is set to read and unread when the read/ unread status of the corresponding second client message is set to unread.”

39. At least Dialpad Standard, Dialpad Pro, and Dialpad Enterprise (collectively, "the '669 Infringing Products") infringe at least claims 22, 23, 26, 27, 28, 30, and 31 of the '669 Patent.

40. For example, the '669 Infringing Products are a "unified messaging system." *See, e.g.*, https://www.dialpad.com/ (describing Dialpad as "the cloud based phone system that powers voice, video, and messages all from a single platform.").

41. Further, the '669 Infringing Products include "a computer implemented server including a processor configured to store a plurality of server messages grouped into a message cluster, the server messages including voicemail messages and fax messages for a client"; "a first client configured to store a first plurality of client messages, the first client messages including voicemail messages and fax messages for the first client and corresponding to the plurality of server messages;" "a first synchronization application for synchronizing the first client messages with the server messages associated with the first client including performing at least one synchronization action selected from the group consisting of a read/unread status of a first client message to read when a read/unread status of a corresponding server message is set to read and unread when the read/unread status of the corresponding server message is set to unread;" and "a read/unread status of a server message to read when a read/unread status of a corresponding first client message is set to read, and unread when the read/unread status of the corresponding first client message is set to unread." *See, e.g.*, https://help.dialpad.com/hc/en-us/articles/115004433163-Release-Notes-Desktop-Apps#december-2017 ("Refresh your app at any time to ensure you are always up to date and see your latest conversations and messages with the new refresh button located at the top.") (demonstrating that a user's local instance of Dialpad can be refreshed, i.e., synchronized, with Dialpad's cloud-based servers in order to update a user's latest conversations and messages); https://www.dialpad.com/fax ("Send faxes straight from your Dialpad desktop app in just four simple clicks") (demonstrating that Dialpad's system includes synchronization of fax messages); https://www.dialpad.com/voicemail ("Voicemails can be automatically emailed to your inbox for easy access and playback.") (demonstrating that Dialpad's system includes synchronization of voice messages); *see also*

https://www.dialpad.com/resources/how-to-videos# (demonstrating, in the snapshot from a Dialpad "how to video," that a "green dot" indicates an unread message, whereas "no dot" indicates a read message):




42. The '669 Infringing Products also include "a second client that is not the first client configured to store, separately from the first plurality of client messages, a second plurality of client messages, the second client messages including voicemail messages and fax messages for the second client and corresponding to the plurality of server messages"; "a second synchronization application for synchronizing the second client messages with the server messages including performing at least one synchronization action selected from the group consisting of a read/unread status of a second client message to read when a read/unread status of a corresponding server message is set to read, and unread when the read/unread status of the corresponding server message is set to unread"; and "a read/unread status of a server message to read when a read/unread status of a corresponding second client message is set to read and unread when the read/ unread status of the corresponding second client message is set to unread." *See, e.g.*: https://www.dialpad.com/pricing (Dialpad Standard enables "1-100 users"; Dialpad Pro requires "3 user minimum"; Dialpad Enterprise requires "100 user minimum") (demonstrating that Dialpad's system synchronizes messages, including the messages' unread/read status, across multiple user devices (*i.e.*, clients)).

43. The '363 Patent has 30 claims, including independent claim 16. Independent claim 16 recites: "A unified messaging system comprising: a server having at least one processor and memory, the server capable of operatively coupling to a data network; a server message storage

module configured to store a plurality of server messages, the plurality of server messages including at least one voicemail or at least one fax; a client message storage module configured to store a plurality of client messages, the plurality of client messages including at least one voicemail or at least one fax corresponding to the at least one voicemail or the at least one fax of the plurality of server messages; and a synchronization application configured to: send a network request to the server over the data network; receive a network response to the network request from the server over the data network, the network response comprising state information about the plurality of server messages in the server message storage module; identify state information about the plurality of client messages in the client message storage module; perform a discrepancy assessment between the state information about the plurality of server messages and the state information about the plurality of client messages; create a list of one or more synchronization actions based on results of the discrepancy assessment; and perform the synchronization actions in the list."

44. At least Dialpad Free, Dialpad Standard, Dialpad Pro, and Dialpad Enterprise (collectively, "the '363 Infringing Products") infringe at least claims 1, 14, 16, and 29 of the '363 Patent. The '363 Infringing Products infringe exemplary claim 16 of the '363 Patent for the same reasons that the '669 Infringing Products infringe at least claim 22 of the '669 Patent.

45. The preceding discussion of claim 22 in the '669 Patent and claim 16 in the '363 Patent is exemplary. The '669 Infringing Products and the '363 Infringing Products likely infringe other claims in the '669 and '363 Patents, respectively, upon same or similar grounds. RingCentral reserves its right to identify additional claims and additional infringing products as supported by discovery in the case.

## <u>COUNT I</u>

## INFRINGEMENT OF U.S. PATENT NO. 8,483,367

46. RingCentral incorporates paragraphs 1-45 by reference.

47. Dialpad's '367 Infringing Products directly and indirectly infringe the '367 Patent.

48. Dialpad has and continues to make, use, sell, and offer for sale the Infringing Products that are covered by at least claims 1, 3, 4, 7, and 8 of the '367 Patent, including without

limitation by way of the ’367 Infringing Products.

49. As pled supra, Dialpad has had knowledge of its infringement of the ’367 Patent since at least July 20, 2018. Dialpad indirectly infringed and continues to indirectly infringe the ’367 Patent by, among other things, actively inducing its customers to use the ’367 Infringing Products in an infringing manner and contributing to the direct infringement by others of the ’367 Infringing Products in an infringing manner, including through Dialpad’s website, advertisements, marketing materials, tutorials, technical support, and instructional guides that Dialpad specifically targets to its customers. By way of example, the images excerpted throughout this Complaint, came from these types of Dialpad targeted materials and are exemplary of Dialpad’s indirect infringement. Further, Dialpad does so knowing that there is no other non-infringing substantial use for the department messaging feature in the ’367 Infringing Products and that the department messaging feature was developed or especially adapted for use in an infringing manner.

50. RingCentral has suffered damages as a result of Dialpad’s infringement of the ’367 Patent and will continue to suffer damages as long as those infringing activities continue, the amount of those damages to be proven at trial.

51. RingCentral has been and will continue to be irreparably harmed by Dialpad’s infringement of the ’367 Patent unless and until such infringement is enjoined by this Court.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 9,774,722**

52. RingCentral incorporates paragraphs 1-45 by reference.

53. Dialpad’s ’722 Infringing Products directly and indirectly infringe the ’722 Patent.

54. Dialpad has and continue to make, use, sell, and offer for sale the Infringing Products that are covered by at least claims 1, 3, 6, 14, 15, 20, and 21 of the ’722 Patent, including without limitation by way of the ’722 Infringing Products.

55. As pled supra, Dialpad has had knowledge of its infringement of the ’722 Patent since at least July 20, 2018. Dialpad indirectly infringed and continues to indirectly infringe the ’722 Patent by, among other things, actively inducing its customers to use the ’722 Infringing

Products in an infringing manner and contributing to the direct infringement by others of the ’722 Infringing Products in an infringing manner, including through Dialpad’s website, advertisements, marketing materials, tutorials, technical support, and instructional guides that Dialpad specifically targets to its customers. By way of example, the images excerpted throughout this Complaint, came from these types of Dialpad targeted materials and are exemplary of Dialpad’s indirect infringement. Further, Dialpad does so knowing that there is no other non-infringing substantial use for the message conferencing feature in the ’722 Infringing Products and that the message conferencing feature was developed or especially adapted for use in an infringing manner.

56. RingCentral has suffered damages as a result of Dialpad’s infringement of the ’722 Patent and will continue to suffer damages as long as those infringing activities continue, the amount of those damages to be proven at trial.

57. RingCentral has been and will continue to be irreparably harmed by Dialpad’s infringement of the ’722 Patent unless and until such infringement is enjoined by this Court.

**COUNT III**

**INFRINGEMENT OF U.S. PATENT NO. 7,702,669**

58. RingCentral incorporates by reference paragraphs 1-45.

59. Dialpad’s ’669 Infringing Products directly and indirectly infringe the ’669 Patent.

60. Dialpad has and continues to make, use, sell, and offer for sale the Infringing Products that are covered by at least claims 22-23, 26-28, and 30-31 of the ’669 Patent, including without limitation by way of the ’669 Infringing Products.

61. As pled supra, Dialpad has had knowledge of its infringement of the ’669 Patent since at least July 20, 2018. Dialpad indirectly infringed and continues to indirectly infringe the ’669 Patent by, among other things, actively inducing its customers to use the ’669 Infringing Products in an infringing manner and contributing to the direct infringement by others of the ’669 Infringing Products in an infringing manner, including through Dialpad’s website, advertisements, marketing materials, tutorials, technical support, and instructional guides that Dialpad specifically targets to its customers. By way of example, the images excerpted throughout this Complaint,

came from these types of Dialpad targeted materials and are exemplary of Dialpad's indirect infringement. Further, Dialpad does so knowing that there is no other non-infringing substantial use for the message synchronization feature in the '669 Infringing Products and that the message synchronization feature was developed or especially adapted for use in an infringing manner.

62. RingCentral has suffered damages as a result of Dialpad's infringement of the '669 Patent and will continue to suffer damages as long as those infringing activities continue, the amount of those damages to be proven at trial.

63. RingCentral has been and will continue to be irreparably harmed by Dialpad's infringement of the '669 Patent unless and until such infringement is enjoined by this Court.

**COUNT IV**

**INFRINGEMENT OF U.S. PATENT NO. 8,600,363**

64. RingCentral incorporates by reference paragraphs 1-45.

65. Dialpad's '363 Infringing Products directly and indirectly infringe the '363 Patent.

66. Dialpad has and continues to make, use, sell, and offer for sale the Infringing Products that are covered by at least claims 1, 14, 16, and 29 of the '363 Patent, including without limitation by way of the '363 Infringing Products.

67. RingCentral has suffered damages as a result of Dialpad's infringement of the '363 Patent and will continue to suffer damages as long as those infringing activities continue, the amount of those damages to be proven at trial.

68. As pled supra, Dialpad has had knowledge of its infringement of the '363 Patent since at least July 20, 2018. Dialpad indirectly infringed and continues to indirectly infringe the '363 Patent by, among other things, actively inducing its customers to use the '363 Infringing Products in an infringing manner and contributing to the direct infringement by others of the '363 Infringing Products in an infringing manner, including through Dialpad's website, advertisements, marketing materials, tutorials, technical support, and instructional guides that Dialpad specifically targets to its customers. By way of example, the images excerpted throughout this Complaint, came from these types of Dialpad targeted materials and are exemplary of Dialpad's indirect

infringement. Further, Dialpad does so knowing that there is no other non-infringing substantial use for the message synchronization feature in the ’363 Infringing Products and that the message synchronization feature was developed or especially adapted for use in an infringing manner.

69. RingCentral has been and will continue to be irreparably harmed by Dialpad’s infringement of the ’363 Patent unless and until such infringement is enjoined by this Court.

//

//

**PRAYER FOR RELIEF**

WHEREFORE, RingCentral respectfully requests the following relief:

(a) A judgment that Dialpad has infringed the ’367 Patent in violation of 35 U.S.C. § 271;

(b) A judgment that Dialpad has infringed the ’722 Patent in violation of 35 U.S.C. § 271;

(c) A judgment that Dialpad has infringed the ’669 Patent in violation of 35 U.S.C. § 271;

(d) A judgment that Dialpad has infringed the ’363 Patent in violation of 35 U.S.C. § 271;

(e) A permanent injunction, pursuant to 35 U.S.C. § 271, restraining and enjoining Dialpad, its officers, agents, attorneys, and employees, and those acting in privity or concert with them, and its successors and assigns, from engaging in infringing conduct;

(f) A judgment against Dialpad that the present case is exceptional pursuant to 35 U.S.C. § 285;

(g) An award to RingCentral of such monetary damages to which it is entitled to compensate it for Dialpad’s infringement, with interest as fixed by the Court;

(h) An award to RingCentral of its costs, expenses, and fees, including reasonable attorneys’ fees, in this action; and

(i) Such other relief as this Court may deem just, equitable, and proper.

Dated: August 27, 2018

By: */s/ Clement Roberts*

Clement Roberts
Amy Van Zant
Lillian Mao
Johanna Jacob
Attorneys for Plaintiff
RINGCENTRAL, INC.

**DEMAND FOR JURY TRIAL**

RingCentral hereby demands a trial by jury on all claims and issues so triable.

Dated: August 27, 2018

By: */s/ Clement Roberts*

Clement Roberts
Amy Van Zant
Lillian Mao
Johanna Jacob
Attorneys for Plaintiff
RINGCENTRAL, INC.